O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKSANA BAIUL, an individual, ) | Case No. CV 15-05163 DDP (MRWx) |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER GRANTING DEFENDANT'S MOTION** |
| v. ) | **TO DISMISS** |
| ) | |
| NBC SPORTS, A DIVISION OF ) | |
| NBCUNIVERSAL MEDIA, LLC, a ) | |
| Delaware limited liability ) | |
| company; ON ICE INC., a ) | |
| California corporation BARRY ) | [Dkt. 31] |
| MENDELSON, an individual, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Presently before the court is Defendant NBC Sports ("NBC")'s Motion to Dismiss. Having considered the submissions of the parties, the court grants the motion and adopts the following Order.

**I.   Background**

This case arises from a dispute between Plaintiff Oksana Baiul and Defendants NBC, On Ice, Inc. ("OII"), and Barry Mendelson ("Mendelson"). Plaintiff alleges that Defendants converted and were unjustly enriched by Plaintiff's 1994 headline performance in

"Nutcracker on Ice." (First Amended Complaint ("FAC") ¶ 1.) The performance was recorded pursuant to an agreement between OII and NBC. (Id. ¶ 2.) According to Plaintiff, under this agreement, "NBC Sports agreed to pay all production expenses associated with the Picture, including royalties to Oksana pursuant to the 'performance agreement' between Oksana, on the one hand, and OII and NBC Sports, on the other hand." (Id. ¶ 3 (certain internal quotation marks omitted).) Plaintiff alleges, however, that due to "fraud or mistake," Oksana never actually entered into any separate "performance agreement" with either OII or NBC. (Id.) Plaintiff further contends that she has been paid no royalties from the performance. (Id.) As a result of this failure, Plaintiff asserts that she entitled to "no less than $10,000,000." (FAC at 8:21.) NBC now moves to dismiss.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other

words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A. Conversion

"To establish [a claim for conversion], a plaintiff must show 'ownership or right to possession of property, wrongful disposition of the property right and damages.'" Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003) (quoting G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992)). California courts "apply a three-part test to determine whether a property right exists: 'First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity.'" Kremen, 337 F.3d at 1030 (quoting G.s. Rasmussen, 958 F.2d at 903).

Although at common law, conversion was limited to tangible property, California has rejected this distinction. See Payne v. Elliot, 54 Cal. 339 (1880); Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97 (2007). Under California law, "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'" Kremen, 337 F. 3d at 1030 (quoting Downing v. Mun. Court, 88 Cal. App. 2d 345, 350 (1948)). Here, the FAC alleges that "Defendants and each of them have converted Oksana Performance (sic) to their benefit in the use and exploitation of the Picture with no consideration to Plaintiffs." (FAC ¶ 18.) The FAC further alleges that "[a]s a direct, proximate and foreseeable result of the conversion by Defendants of Oksana's Performance" she is "entitled to monetary restitution of the value of the Oksana Performance in an amount of no less than $10,000.000." (Id. ¶ 19.)

Conversion claims involving intangible property may, however, run afoul of federal copyright law. See Weller Const., Inc. v. Mem'l Healthcare Servs., No. SACV 14-01115-CJC, 2014 WL 5089422 at *3 (C.D. Cal. Oct. 8, 2014). A state law claim is preempted where the work at issue comes within the subject matter of copyright and the state law grants rights equivalent to those protected by federal copyright law. Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1189 (C.D. Cal. 2001). Plaintiff argues that her claims fall outside the copyright act because although "Shakespeare could agree with Oksana that while she is a 'tangible' living, breathing 'piece of work,' she is not 'fixed in a tangible medium of expression' within the intendment of the Copyright Act." (Opp. at 14:7-9.) The thrust of this argument is not entirely clear to the court, as

Plaintiff does not allege that Defendants converted her, but rather the performance, which was recorded. Indeed, without such fixation, it is unclear how any of the allegedly withheld royalties could possibly have been generated, and Plaintiff herself acknowledges that her claim is related to money earned "from the filming of her live performances." (Opp. at 15:11-12.)

Nor is the court persuaded by Plaintiff's argument that she is asserting rights distinct from those protected by copyright law. Although Plaintiff argues that her claim is for money wrongly withheld from her, and is unrelated to Defendants' right to exploit the film, that is not what the FAC alleges. (FAC ¶ 18.) ("Defendants and each of them have converted Oksana['s] Performance to their benefit in the use and exploitation of the Picture with no consideration to Plaintiffs.") California courts have rejected similar attempts to distinguish conversion claims from rights under copyright law.[1] See Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 792 (2003); Cf. Dead Kennedys v. Biafra, 37 F.Supp. 2d 1151, 1154 (N.D. Cal. 1999) (finding conversion claim not preempted where claim alleged "conversion of royalties, not of the works themselves.").

Even if Plaintiff's conversion claim were not preempted by the Copyright Act, it would still be barred by the statute of limitations. "Code of Civil Procedure section 338, subdivision (c) provides for a three-year statute of limitations for actions alleging conversion." Strasberg v. Odyssey Group, 51 Cal. App. 4th 906, 915 (1996). "Under California law, the general rule is well

---

[1] Although the opposition makes some reference to an implied contract claim, the FAC alleges no such claim.

established: '[T]he statute of limitations for conversion is triggered by the act of wrongfully taking property.'" AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal. App. 4th 631, 639 (2006) (quoting Bono v. Clark, 103 Cal. App. 4th 1409, 1433 (2002). In cases of fraudulent concealment or violation of a fiduciary duty, a "discovery rule" exception may toll the statute until an aggrieved party discovers, or should have discovered, the conversion. AmerUS Life, 143 Cal. App. 4th at 639. Here, although the Performance occurred in 1994 and the last alleged distribution agreement was executed in 1995, the FAC conclusorily asserts that Plaintiff's claims were not discoverable before 2014. (FAC ¶ 5.) This is insufficient. "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (quoting McKelvey v. Boeing North American, Inc., 74 Cal. App. 4th, 151, 160 (1999)). The only specifically alleged fact bearing on Plaintiff's diligence is that "[a]t the time of the execution of the Nutcracker Agreement, Oksana was a minor who could not read or write in the English language, and with a limited understanding of spoken English language." (FAC ¶ 5.) The Nutcracker Agreement, however, was executed no later than 1994. The FAC is silent as to what steps Plaintiff took, or difficulties she faced, upon reaching the age of majority or at any time in the twenty-odd years preceding

the filing of this action.  Plaintiff has not, therefore, met her burden to show diligence.  See Fox 35 Cal. 4th at 807.

   B.   Unjust Enrichment

"Unjust enrichment is a 'general principle, underlying various legal doctrines and remedies,' rather than a remedy itself." Melchior, 106 Cal. App. 4th at 793 (quoting Dinosaur Dev., Inc. v. White, 215 Cal. App. 3d 1310, 1315 (1989).  "There is no cause of action in California for unjust enrichment." Id.; See also Robinson v. HSBC Bank USA, 732 F.Supp.2d 976 (N.D.Cal.2010) ("California does not recognize a stand-alone cause of action for unjust enrichment.").  The First Cause of Action is, therefore, dismissed.

   C.   Accounting

Some courts have held "that an accounting is merely an equitable remedy, and therefore cannot be maintained as an independent cause of action." Fradis v. Savebig.com, No. CV 11-7275 GAF, 2011 WL 7637785 at *8 (C.D. Cal. Dec. 2, 2011).  Other courts, however, citing Tesselle v. Mcloughlin, 173 Cal. App.4th 156 (2009), have concluded that an accounting can exist as an independent equitable cause of action.  See, e.g., Dahon North Am., Inc. v. Hon, No. 11-cv-5835 ODW, 2012 WL 1413681 at * 11 (C.D. Cal. Apr. 24, 2012); see also Baidoobonso-Iam v. Bank of Am., No. CV 10-9171 CAS, 2011 WL 3103165 at *6 (C.D. Cal. Jul. 25, 2011) ("An accounting may take the form of either a legal remedy or an equitable claim.").

Where independently viable, a cause of action for an accounting requires that "a relationship exist[] between the plaintiff and defendant that requires an accounting, and that some

balance is due the plaintiff that can only be ascertained by an accounting." Tesselle, 173 Cal. App. 4th at 179.  Though the relationship giving rise to an accounting claim need not necessarily be a fiduciary one, courts typically require that it reflect some degree of confidentiality or closeness.  Tesselle, 173 Cal.App.4th at 179.; Dahon, 2012 WL 1413681 at *13; Fradis, 2011 WL 7637785 at *9; Canales v. Fed. Home Loan Mortgage Corp., No. CV 11-2819 PSG, 2011 WL 3320478 at * 8 (C.D. Cal. Aug. 1, 2011).  Here, Plaintiff merely alleges that "Defendants have failed and refused and continue to fail and refuse to account to and pay Plaintiffs . . . [, and an] accounting is necessary and appropriate since the exact and precise monies due to Plaintiffs are unknown to Plaintiffs and cannot be ascertained without an accounting."  (FAC ¶ 21.)  Such allegations fail to establish the existence of any close or confidential relationship between Plaintiff and any Defendant.  The accounting claim is, therefore, dismissed.

**IV. Conclusion**

    For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.  Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: February 2, 2016

DEAN D. PREGERSON

United States District Judge